NEWMAN, Circuit Judge,
concurring in the judgment.
If the court had simply held that the Ferguson marketing method fits the class of processes now barred from patenting by *1367 this court’s ruling in In re Bilski, 545 F.3d 943 (Fed.Cir.2008) (en banc), I could not object. However, the panel majority goes farther than is necessary or appropriate, redefining the Bilski opinion and expounding dicta that transcend the facts of this case.
My colleagues err in asserting that the “machine-or-transformation” test is that of the Supreme Court. See Gottschalk v. Benson, 409 U.S. 63, 71, 93 S.Ct. 253, 34 L.Ed.2d 273 (1972) (“We do not so hold.”). And in their purported “clarification” of the Bilski decision, my colleagues suggest that Bilski overturned not only State Street Bank but also other precedent including that based on the Freeman-Walter-Abele test, the “technological arts” test, and the “physical steps” test. Maj. op. at 1356 n. 3. This sweeping rejection of precedent simply enlarges the taint on the thousands of patents that were granted on application of these tests. Indeed, this court in Bilski reaffirmed the holding of State Street Bank that the “ ‘business method exception’ was unlawful and that business method claims (and indeed all process claims) are ‘subject to the same legal requirements for patentability as applied to any other process or method.’” Bilski, 545 F.3d at 960 (quoting State Street Bank, 149 F.3d at 1375-76). Although the Bilski court held that the State Street Bank criterion of “useful, concrete and tangible result” does not provide patent-eligibility if the maehine-or-transfor-mation test is not met, the court recognized that the State Street Bank test was directed to processes performed by computer, thus meeting the Bilski test: “In State Street, as is often forgotten, we addressed a claim drawn not to a process but to a machine.” Bilski, 545 F.3d at 959 n. 18 (emphasis in original).
There are indeed many uncertainties remaining in this court’s restructure of the legal framework of modern technology and its fruits. However, the potentially complex issues of when computers are Bilski-acceptable machines do not arise in the Ferguson claims. I agree that these issues require clarification, for uncertainty as to legal rights is as much a disincentive to commerce as is their deprivation. However, this case is not the appropriate vehicle for dictum of potentially large consequence. For example, the court disposes of the Ferguson method on the ground that it is an “abstract idea,” although it is definite and concrete and limited, and not at all abstract. The court resolves this dilemma by defining “abstract idea” as anything that does not meet the Bilski machine-or-transformation test. However, the Ferguson marketing method is not an abstraction, even in Bilski terms. The Ferguson method “does not pre-empt all uses of a fundamental principle in any field but is limited to a particular use, a specific application. Therefore, it is not drawn to the principle in the abstract”. Bilski, 545 F.3d at 957.
The court’s circular definition of “abstraction” as anything that is not patent-eligible under Bilski can impact the many new methods flowing from the new information technologies. These methods have enhanced human capabilities, blurring the traditional line between machine and human; their patentability warrants at least consideration in appropriate cases, not disposition in dictum.
Until we are confident in understanding the consequences of our rulings, let us not forget that today’s “knowledge economy” arose and thrived under the past law of patent eligibility. Although I agree that new thinking is warranted, this court’s broadside assault on patent-eligible subject matter is unsupported by any stated policy or benefit to either society or commerce. *1368 We are ignorant of whether competitive activity, creative energies, and entrepreneurial initiatives, will founder or be facilitated by this court’s dramatic change in the legal framework. I take note that scholarship is starting to appear, as economists recognize “the new economy.” See, e.g., Richard G. Anderson, The New Economy: How the United States is Adapting to the Knowledge-Based Economy of the Twenty-First Century, Southern Illinois Economic Development Conference 21 (Sept. 21, 2006) (discussing intellectual property rights and the creation of knowledge). But much more needs to be understood, as this court undertakes to change the legal framework of this economy.
Today’s new capabilities of acquiring and using knowledge are producing myriad creative advances. This court has offered no explanation of the interests and policy that we intend to serve by removing such advances from the legal framework of the patent system. See, e.g., Milton Katz, The Role of the Legal System in Technological Innovation and Economic Growth, The Positive Sum Strategy 169 (1986) (explaining that the legal system plays a part in facilitating and promoting “business enterprise, technological innovation, and economic thought”).
This court’s retreat into the methods of the past is unworthy of our responsibility to support innovation in the future. Major adjustment in established law should be based on changing industrial or intellectual or equitable needs — of which no evidence is before this court. The only need of which I am aware is that of the current harsh economic times, when the need is of enhanced incentives to innovation and investment in new things and new industries, not reduction in the existing incentives.[1]
Meanwhile, the patentability of inventions directed to information-based procedures and computer-facilitated processes is readily tested under the established substantive criteria of patentability. I agree with the patent examiner’s determination that the Ferguson marketing method does not pass the test of unobviousness, 35 U.S.C. § 103. On this ground, I concur in the judgment.

. I take note of the panel majority's criticism of my views as "policy” related. Indeed, the major concern with my colleagues' aggressive elimination of patent access in areas of modern commerce is their failure to consider the policy effects. The success of the common law derives from its relation to the policy that it implements. As Justice Holmes stated:
The very considerations which judges most rarely mention, and always with an apology, are the secret root from which the law draws all the justices of life. I mean, of course, considerations of what is expedient for the community concerned. Every important principle which is developed by litigation is in fact and at bottom the result of more or less definitely understood views of public policy; most generally, to be sure, under our practice and traditions, the unconscious result of instinctive preferences and inarticulate convictions, but nonetheless traceable to views of public policy in the last analysis.